IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA  *

vs.  *

                                          CASE NO. 4:06-CR-42(CDL)

RICHARD S. KENT  *

     Defendant.  *

## O R D E R

On November 7, 2006, Appellant Richard S. Kent was convicted by the magistrate court of driving under the influence of alcohol ("DUI") in violation of 18 U.S.C. §§ 7 and 13, in conjunction with O.C.G.A. § 40-6-391(a)(5). Appellant now challenges his conviction, arguing that the magistrate court erred in admitting the results of his blood alcohol test. This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402.[1] Having reviewed the parties' briefs, the applicable law, and the record below, the Court affirms the magistrate court's judgment of conviction.

## STANDARD OF REVIEW

In reviewing a magistrate court judgment, the district court functions as an appellate court. The district court must review a judgment of the magistrate court using the same standard that a court of appeals would use to review a district court judgment.

---

[1] "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment . . . to a judge of the district court of the district in which the offense was committed."

*United States v. Paramount Moving & Storage Co., Inc.*, 479 F. Supp. 959, 959 (M.D. Fla. 1979). Thus, this Court reviews the magistrate court's decision to admit the results of Appellant's blood test for abuse of discretion. *See United States v. Lindsey*, 482 F.3d 1285, 1294 (11th Cir. 2007) (internal citation omitted); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (internal citation omitted). "[W]hen employing an abuse of discretion standard, [the reviewing court] will leave undisturbed a [lower] court's ruling unless [it] find[s] that the [lower] court has made a clear error of judgment, or has applied the wrong legal standard." *Corwin*, 475 F.3d at 1249 (internal quotation marks and citation omitted) (first alteration in original).

## FACTUAL BACKGROUND

On June 9, 2006, at approximately 2:30 a.m., Appellant entered the main gate at Fort Benning and failed to stop at a military police checkpoint.[2] (Tr. 7:4-8:19, Nov. 7, 2006.) Specialist Vincent Fuller pulled him over, and when he approached the vehicle, Specialist Fuller "smelled a strong odor of alcoholic substance on [Appellant's] breath and in the vehicle." (Tr. 9:1-11:8.) He asked Appellant to step out of the vehicle and perform three field sobriety tests. (Tr. 12:22-24.) When Appellant was unable to complete any of the tests successfully, Specialist Fuller placed Appellant under arrest for

---

[2]Appellant was on active military duty on the date of his arrest.

suspected DUI. (Tr. 13:8-14:8, 15:6-13.) Specialist Fuller read to Appellant the Georgia Implied Consent Warnings and "made sure he understood each section before [they] left[]" the scene of the arrest. (Tr. 15:20-16:2.) Specialist Fuller transported Appellant to Martin Army Community Hospital for a blood test of his alcohol concentration. (Tr. 20:1-12.) He testified that when they arrived at the hospital, he witnessed Appellant verbally consent to the blood test. (Tr. 21:3-5.) He explained, however, that Appellant consented to the test only after Specialist Fuller "informed him of [Fort Benning] regulations and told him that [he] could call [Appellant's] company commander or his blood would be subpoenaed[]" if Appellant refused consent.[3] (Tr. 24: 19-25:19.)

Thermetrice Nunnally, a medical technologist in the Pathology Department at Martin Army Community Hospital, performed the chemical analysis of Appellant's blood. (Tr. 28:10-13.) Although she is not employed by the GBI/DFS, Ms. Nunnally is certified to conduct blood analyses for alcohol concentration pursuant to a permit, issued by GBI/DFS, which states: "[Ms. Nunnally] is certified to conduct analysis of blood specimens for their alcohol content pursuant to all provisions of the Official Code of Georgia Annotated authorizing the [GBI/DFS] to approve methods and issue permits to perform chemical

---

[3] Fort Benning military regulations provide active duty soldiers with three options upon an arrest for suspected DUI: (1) the soldier can consent to a blood alcohol test; (2) the soldier's company commander can sign to have the soldier's blood drawn; or (3) the soldier's blood may be obtained by subpoena.

3

analyses." (Tr. 29:22-30:20, Government Ex. 2.) Ms. Nunnally tested Appellant's blood using a Dade Dimension Analyzer, and she testified, over objection, that the GBI/DFS had approved both this method of testing and the specific machine used to test Appellant's blood. (Tr. 29:6-8, 31:6-8.) The results of Appellant's blood test revealed that his blood alcohol concentration was 0.229 grams. (Tr. 40:14.)

## DISCUSSION

Appellant was convicted of violating O.C.G.A. § 40-6-391(a)(5), which provides that

> [a] person shall not drive or be in actual physical control of any moving vehicle while[] . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]

In order for the Government to obtain a conviction under this statute, it must prove beyond a reasonable doubt that the accused's alcohol concentration was 0.08 grams or more. The Government may prove this element of the offense by admitting into evidence a valid chemical analysis of the accused's blood, urine, breath or other bodily substance. O.C.G.A. § 40-6-392(a). Under Georgia law, a chemical analysis is considered "valid" only when it is "performed according to *methods* approved by the [GBI/DFS] on a *machine* which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an *individual* possessing a valid permit issued by [GBI/DFS] for

4

this purpose." *Id.* at § 40-6-392(a)(1)(A) (emphasis added). It is the Government's burden to demonstrate compliance with each of the foundational requirements of O.C.G.A. § 40-6-392(a)(1)(A), and failure to show such compliance renders the results of a chemical analysis inadmissible under Georgia law. *See Peek v. State*, 272 Ga. 169, 169, 527 S.E.2d 552, 553 (2000) ("When the State introduces evidence of a chemical test to prove that a defendant was driving under the influence, it has the burden of demonstrating compliance with the statutory, foundational requirements.") (internal citation omitted); *see also Scara v. State*, 259 Ga. App. 510, 511, 577 S.E.2d 796, 798 (2003) ("Before the State can introduce the results of a chemical test, . . . to prove a violation of O.C.G.A. § 40-6-391(a)(5), it has the burden of demonstrating compliance with the statutory, foundational requirements of O.C.G.A. § 40-6-392.") (internal quotation marks and citation omitted). A court may likewise exclude the results of a chemical analysis under Georgia law when the arresting officer fails to read to the accused Georgia's Implied Consent Notice, or the accused involuntarily submits to a chemical test. *See* O.C.G.A. § 40-5-67.1(b); *Collier v. State*, 266 Ga. App. 762, 764, 598 S.E.2d 373, 375 (2004); *State v. Leviner*, 213 Ga. App. 99, 102, 443 S.E.2d 689, 691 (1994).

In the present appeal, Appellant contends that the magistrate court erroneously admitted the results of his blood test because: (1) Specialist Fuller failed to comply with Georgia's Implied Consent

5

Provision; (2) Appellant's consent to the blood test was not voluntary; and (3) the Government failed to establish compliance with the foundational requirements of O.C.G.A. § 40-6-392(a)(1)(A).

## I. Georgia's Implied Consent Statute

In Georgia, any person who operates a motor vehicle on the highways of the state is deemed to have given consent, subject to the requirements of O.C.G.A. § 40-6-392, to chemical testing of a bodily substance for the presence of alcohol or any other drug. *See* O.C.G.A. § 40-5-55(a). "At the time a chemical test or tests are requested, [however,] the arresting officer shall select and read to the person the appropriate implied consent notice[,]" which informs the suspect of a right to refuse chemical testing and the consequences of such a refusal.[4] O.C.G.A. § 40-5-67.1(b). If the arresting officer provides timely and accurate notice of the implied

---

[4]For DUI suspects over the age of 21, the implied consent notice reads as follows:
> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical test of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical test of your (designate which tests) under the implied consent law?

O.C.G.A. § 40-5-67.1(b)(2).

6

consent provision, the results of any subsequent testing are admissible against the suspect at trial.

Appellant maintains that the magistrate court erred in admitting the results of his blood test because Specialist Fuller provided "inapplicable information" when he read to Appellant the implied consent notice. Specifically, Appellant contends that the trial transcript fails to make clear that the arresting officer *did not* read the warnings applicable to commercial drivers or suspects under the age of 21. At Appellant's trial, Specialist Fuller testified that he "read all sections of the warnings[]" from a standard form he received from the Provost Marshal's Office. (Tr. 15:2424-25, 16:7-21.) The form displays three sets of warnings, each of which applies to a different category of drivers: suspects under age 21, suspects over age 21, and commercial driver suspects. (Government Ex. 1.) The warnings track the language of the implied consent statute, and Specialist Fuller indicated that he "read it verbatim" and "made sure [Appellant] understood each section before [they] left." (Tr. 17:8, 16:1-2.) The magistrate court determined that Specialist Fuller read to Appellant the appropriate implied consent notice, and "if not the exactly proper consent notice[, it] was harmless in any deviation by other consent notices as to different individuals." (Tr. 55:18-21.) Since the record contains undisputed evidence that Specialist Fuller read the implied consent notice from a form which includes the proper language, the Court cannot find that

7

the magistrate court abused its discretion in admitting the results of Appellant's blood test.

Appellant also argues, however, that even if Specialist Fuller read the appropriate implied consent notice, the results of his blood test are still inadmissible because Specialist Fuller coerced Appellant's consent by citing to Fort Benning regulations on obtaining blood samples from military personnel. Specifically, Appellant argues that Specialist Fuller's statement that he was "going to get that blood[] . . . [even if he] had to call [Appellant's commanding officer]," (Tr. 23:19-21) incorrectly informed Appellant that he did not have the right to refuse the blood test. "Where the police mislead an accused about his implied consent rights, any consent based upon the misrepresentation is invalid[,]" *Collier*, 266 Ga. App. at 764, 598 S.E.2d at 375, and the results of a chemical test are not admissible if the suspect is "deprived by the totality of [] inaccurate, misleading, and/or inapplicable information given to him by the arresting officer of making an informed choice under the implied consent statute[.]" *Leviner*, 213 Ga. App. at 102, 443 S.E.2d at 691.

Specialist Fuller testified that Appellant "kept asking [] why he would have to give his blood instead of just refusing[,]" and that "as we explained to him the policies and regulations of Fort Benning, he eventually consented." (Tr. 25:6-8, 20:23-25.) Although Specialist Fuller admitted that Appellant initially "refused to take

8

any tests[,]" he also testified that he "did not tell [Appellant] directly [that] he had to [consent to the test]. [He simply] explained to him the policy." (Tr. 21:15-21, 23:6-8.) Based on this evidence, the Court cannot find that the magistrate court abused its discretion in declining to find that Specialist Fuller's statements "deprived [Appellant] by the totality of [] inaccurate, misleading, and/or inapplicable information . . . of making an informed choice under the implied consent statute[.]" *Leviner*, 213 Ga. App. at 102, 443 S.E.2d at 691.

## II. O.C.G.A. § 40-6-392(a)(1)(A)

As his final basis for appeal, Appellant contends that the magistrate court erred in admitting the results of his blood test because the Government failed to present admissible evidence meeting the statutory requirements of O.C.G.A. § 40-6-392(a)(1)(A) with respect to either the method of blood testing or the specific machine used to test Appellant's blood. However, since "substantial statutory compliance can be established by circumstantial evidence arising from the testimony of a chemist who operated the machine and performed the test[,]" *Bazemore v. State*, 225 Ga. App. 741, 744, 484 S.E.2d 673, 676 (1997), the Court finds that the Government satisfied its burden through the trial testimony of Thermetrice Nunnally, the chemist who performed Appellant's blood test.[5]

---

[5]Although the Court finds that the Government complied with the admissibility requirements under Georgia law, the Court observes that it is not clear that compliance with the Georgia statute is the only path for

9

Under Georgia law, the State may prove that a particular machine was "in good working order" through the testimony of the qualified individual who performed the test. *See Smith v. State*, 256 Ga. App. 785, 785, 570 S.E.2d 26, 27-8 (2002) (finding statutory compliance where forensic toxicologist testified that "the machine was working and there were no problems with the machine"). Additionally, "the State may prove compliance with the 'approved methods' requirements of O.C.G.A. § 40-6-392(a)(1)(A) solely through the oral testimony of the individual who conducted the test." *Verlangieri v. State*, 273 Ga. App. 585, 590, 615 S.E.2d 633, 638 (2005) (*citing Price v. State*, 269 Ga. 222, 225, 498 S.E.2d 262, 265 (1998)). In the present case, Ms. Nunnally testified that: (1) since November 2005, the GBI/DFS has continuously certified the specific Dade Dimension Analyzer used to test Appellant's blood; (2) "this instrument has been approved for illegal alcohols"; (3) Ms. Nunnally has never run a test that has not

---

admissibility of the chemical blood test. *See United States v. Tyson*, 829 F. Supp. 368, 370-71 (M.D. Ala. 1993)(state law rules regarding the admissibility of evidence may not apply to cases presented in federal court under the Assimilative Crimes Act, 18 U.S.C. § 13, noting, with approval, that the Fourth and Ninth Circuit Courts of Appeals have found that "the Assimilative Crimes Act[] . . . assimilates state *substantive* law but does not generally assimilate state *procedures*.") (emphasis added); *see also United States v. Garner*, 874 F.2d 1510, 1512 (11th Cir. 1989)("Only those portions of state law defining the elements of an offense and proscribing punishment are *automatically* assimilated into federal law by the Federal Assimilative Crimes Act; other provisions of state law relating to the prosecution are assimilated only if they do not conflict with federal laws on point.") (emphasis added). Therefore, even if the blood test results were found not to be admissible under Georgia law because the Government failed to comply with the requirements of O.C.G.A. § 40-6-392(a)(1)(A), the Court finds that the evidence would be admissible under the Federal Rules of Evidence. *See Fed. R. Evid.*, Rules 401, 402, 702 and 901.

been approved by the GBI/DFS; and (4) her "methods [have] been approved by the [GBI/DFS]." (*See* Tr. 37:24-38:7, 38:25-39:1, 32:25-33:4, 33:15-17.) Based on this testimony, the Court cannot find that the magistrate court erred in admitting Appellant's blood test results pursuant to O.C.G.A. § 40-6-392(a)(1)(A).[6]

## CONCLUSION

For the reasons stated above, the Court finds that the magistrate court did not abuse its discretion in admitting the results of Appellant's blood alcohol test. Accordingly, the judgment is affirmed.

IT IS SO ORDERED, this 14th day of June, 2007.

                                        S/Clay D. Land
                                               CLAY D. LAND
                               UNITED STATES DISTRICT JUDGE

---

[6]As a footnote, the Court observes that even if it were to find that the conviction should be reversed, the Defendant could be retried by the same factfinder who presumably would reach the same result, albeit based upon a more thorough presentation by the Government. *See Lockhart v. Nelson,* 488 U.S. 33 (1988)(double jeopardy clause does not forbid retrial when the sum of the evidence offered by the Government and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict).

11